UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Quintin M. Littlejohn**, | ) C/A No. 6:08-0242-RBH-WMC |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **Report and Recommendation** |
| | ) |
| **Bill Blanton**, Sheriff; | ) |
| **Harold Crocker**, Captain; | ) |
| **Kenny Brown**, Lieutenant; | ) |
| **NFN Holly**, Staff Sergeant; and | ) |
| **Mr. Spencer**, Sergeant of the Cherokee County Detention Center, | ) |
| | ) |
| Defendants. | ) |

***Background of this Case***

The plaintiff is a pre-trial detainee at the Cherokee County Detention Center in Gaffney, South Carolina. Information provided by the plaintiff in his recently-filed habeas corpus actions indicates that he has been charged with possession of crack cocaine.

The plaintiff is under an order of pre-filing review. *See Graham v. Riddle*, 554 F.2d 133, 134-35 & n. * (4th Cir. 1977).[1] The plaintiff was confined in the South Carolina Department of Corrections until May of 2003, when he "maxed out" his sentence for his

---

[1] The order of pre-filing review was entered on July 10, 1998, by the Honorable G. Ross Anderson, Jr., United States District Judge, in *Quintin Littlejohn v. William J. Clinton, President of the United States*, Civil Action No. 6:98-1169-13AK. Judge Anderson's order authorizes the Clerk's Office to assign civil action numbers to the plaintiff's pleadings for docket control purposes.

1

1982 conviction for armed robbery entered in the Court of General Sessions for Cherokee County. Prior to his current incarceration, the plaintiff resided in Gaffney, South Carolina.[2]

In the complaint, the plaintiff alleges that various conditions at the Cherokee County Detention violate the so-called *Nelson v. Leeke* consent decree. The plaintiff alleges or contends: *(1)* the defendants are not immune from suit and "are under color" of law; *(2)* the defendants violate international law by giving the plaintiff only one hour of recreation per week; *(3)* defendants only give one telephone call per week; *(4)* the defendants will not "afford" the plaintiff a winter coat on his recreation day; *(5)* the defendants have assigned the plaintiff to the maximum security unit without reports of a violation of rules and without the decision of an adjustment committee; *(6)* the defendants do not provide hygiene to indigent inmates; *(7)* defendants have dirty showers and dirty rooms, and only change uniforms once a week; *(8)* the *Nelson v. Leeke* consent decree extends to county jails; *(9)* the defendants have no law library; *(10)* the defendants force the plaintiff to take medication, "a clear violation of" the *Nelson v. Leeke* consent decree; and *(11)* the defendants force the plaintiff to live with sixty-eight other prisoners in the E-Dorm, which was built for forty-eight persons, and provides cold food and no fresh uniforms, and fail to provide winter coats, boots, hats, or winter wear. In his prayer for relief, the plaintiff seeks a declaratory judgment, injunctive relief, $10,000 in nominal damages, $50,000 for pain and suffering, $80,000 for mental anguish, $20,000,000 in compensatory damages, and $50,000,000 in punitive damages.

---

[2]*See* pleadings in *Quintin Littlejohn v. David Edwards Toyota; Mark Edwards; and All Agents in Active Concert*, Civil Action No. 7:06-1012-RBH-WMC. This court may take judicial notice of Civil Action No. 7:06-1012-RBH-WMC. *Aloe Creme Laboratories, Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970).

2

*Discussion*

Under established local procedure in this judicial district, a careful review[3] has been made of the *pro se* complaint pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act. The review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-325 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995)(*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979) (recognizing the district court's authority to conduct an initial screening of any *pro se* filing);[4] *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978), *cert. denied*, *Moffitt v. Loe*, 446 U.S. 928 (1980); and *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, *Leeke v. Gordon*, 439 U.S. 970 (1978). The plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *See Erickson v. Pardus*, ___ U.S. ___, 75 U.S.L.W. 3643, 167 L.Ed.2d 1081, 127 S.Ct. 2197 (2007)(*per curiam*); *Hughes v. Rowe*, 449 U.S. 5, 9-10 & n. 7 (1980)(*per curiam*); and *Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2nd Cir. 1975). Even under this less stringent standard, the § 1983 complaint is subject to summary dismissal. The requirement of liberal construction does not mean that the court

---

[3]Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (DSC), the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

[4]*Boyce* has been held by some authorities to have been abrogated in part, on other grounds, by *Neitzke v. Williams*, 490 U.S. 319 (1989) (insofar as *Neitzke* establishes that a complaint that fails to state a claim, under Federal Rule of Civil Procedure 12(b)(6), does not by definition merit *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) [formerly 28 U.S.C. § 1915(d)], as "frivolous").

can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

The plaintiff's reliance on the so-called *Nelson* case is misplaced. The *Nelson* case concerned the South Carolina Department of Corrections, *not* the Cherokee County Detention Center. The so-called "*Nelson*" consent decree was entered in *Plyler v. Leeke*, Civil Action No. 3:82-876-2, in the mid-1980's. *See Plyler v. Leeke*, 1986 WESTLAW® 84459 (D.S.C., March 26, 1986), *affirmed in part and dismissed in part*, *Plyler v. Leeke*, 804 F.2d 1251 [Table], 1986 U.S.App. LEXIS® 33517 (4th Cir., Nov. 12, 1986). The original representative for the class in Civil Action No. 3:82-876-2 was Gary Wayne Nelson. Upon Mr. Nelson's release from the South Carolina Department of Corrections, Harry Plyler became the class representative. Even so, *Plyler v. Evatt* is often referred to as the *Nelson* suit. *See also Plyler v. Evatt*, 846 F.2d 208 (4th Cir.), *cert. denied*, 488 U.S. 897 (1988).

The so-called *Nelson* consent decree was terminated on June 4, 1996, pursuant to the defendants' motion under the Prison Litigation Reform Act. The termination of the consent decree was affirmed on November 14, 1996, by the United States Court of Appeals for the Fourth Circuit in *Plyler v. Moore*, 100 F.3d 365 (4th Cir. 1996), *cert. denied*, 520 U.S. 1277 (1997).

The plaintiff's claims about the absence of a law library at the Cherokee County Detention Center are foreclosed by circuit case law. The United States Court of Appeals for the Fourth Circuit has ruled that the Constitution of the United States does not require every local jail even to have a law library. *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987). The holding in *Magee v. Waters* is based on the knowledge that county jails are generally short-term facilities, wherein "'the brevity of confinement does not permit sufficient

time for prisoners to petition the courts.'" *Magee v. Waters*, 810 F.2d at 452. *See also Cruz v. Hauck*, 515 F.2d 322, 331-33 (5th Cir. 1975), *cert. denied*, *Andrade v. Hauck*, 424 U.S. 917 (1976). In *Cruz v. Hauck*, the Court noted: "access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate device of *the State*." 515 F.2d at 331 (emphasis added). Since documents filed in the plaintiff most recent habeas corpus actions show that the plaintiff is represented by a Public Defender in his pending criminal case, the plaintiff is not constitutionally entitled to access to a law library as a pre-trial detainee.

Moreover, the plaintiff has not alleged a specific injury from his lack of access to a law library at the Cherokee County Detention Center. *See Magee v. Waters*, 810 F.2d at 452 (prisoner must show specific injury or actual harm from absence of law library when that prisoner was "housed only temporarily in a local jail"); and *Cruz v. Hauck*, 515 F.2d at 331-33 & nn. 16-18. In other words, a plaintiff must show an "actual injury" resulting from the loss or absence of his or her legal materials. *See Peterkin v. Jeffes*, 855 F.2d 1021, 1040-1041 & nn. 24-25 (3rd Cir. 1988); and *Sands v. Lewis*, 886 F.2d 1166, 1170-71 (9th Cir. 1989) (collecting cases).[5] *Cf. Lewis v. Casey*, 518 U.S. 343 (1996); and *Michau v. Charleston County*, 434 F.3d 725, 728 (4th Cir. 2006) (in access to court claim, inmate must allege and show that he has suffered an actual injury or specific harm to his litigation efforts as a result of the defendant's actions).

The plaintiff's forced medication claims are the subject of a separate civil rights action in which service of process was authorized. *See Littlejohn v. Ferlauto*, Civil Action No. 6:07-3651-RBH-WMC. The plaintiff is receiving a full opportunity to litigate his

---

[5]*See also Harrell v. Keohane*, 621 F.2d 1059 (10th Cir. 1980), and *Twyman v. Crisp*, 584 F.2d 352 (10th Cir. 1978).

5

forced medication claims in Civil Action No. 6:07-3651-RBH-WMC. This court may take judicial notice of *Littlejohn v. Ferlauto*, Civil Action No. 6:07-3651-RBH-WMC. *Aloe Creme Laboratories, Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970).

The plaintiff alleges that he and other detainees are served cold food.[6] Prisons and jails are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *See French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, *Owens v. French*, 479 U.S. 817 (1986); and *Brown v. Detella*, 1995 U.S.Dist. LEXIS® 13260, *7-*8 [no WESTLAW® citation available] (N.D. Ill., Sept. 7, 1995) (*citing Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986): "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required."). *See also Landfair v. Sheahan*, 878 F. Supp. 1106 (N.D. Ill. 1995); *Taylor v. Turner*, 884 F.2d 1088, 1090 (8th Cir. 1989); *Chavis v. Fairman*, 1994 U.S. Dist. LEXIS® 1850, *11 n. 5, 1995 WESTLAW®55719 (N.D. Ill., Feb. 15, 1994) ("While Chavis depicts less than optimal eating conditions and fare, all of his allegations combined still fail to suggest that he was being served food which posed 'an immediate danger to his health and well being.'"), *affirmed*, *Chavis v. Fairman*, 51 F.3d 275 [Table], 1995 U.S.App. LEXIS® 7916, 1995 WESTLAW®156599 (7th Cir., April 6, 1995). Moreover, most federal courts that have considered the issue have ruled that the temperature or variety of food is not a constitutional violation:

---

[6]Since the plaintiff is a pre-trial detainee, his civil rights claims are evaluated pursuant to the Fourteenth Amendment, not the Eighth Amendment. See, e.g., *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.").

> Fisher complains that food was served cold "65 percent of the Time." (Compl. P IV.) The Eighth Amendment requires that prisoners be served "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)(*quoting Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041, 68 L. Ed. 2d 239, 101 S. Ct. 1759 (1981)). Fisher does not allege that the food served was nutritionally inadequate; Fisher's only complaint is that it was sometimes cold. Such a claim does not rise to the level of a constitutional violation and is accordingly dismissed. *See, e.g., Madyun v. Thompson*, 657 F.2d 868, 875 (7th Cir. 1981)[.]

*Fisher v. Department of Correction*, 1995 U.S.Dist. LEXIS® 15206, *13-*14, 1995 WESTLAW® 608379 (S.D.N.Y., Oct. 12, 1995). *See also Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) (prison officials' serving cold and poorly prepared food did not constitute cruel and unusual punishment because prisoners received three meals a day in compliance with nutritional guidelines set by dietician, and food did not offend contemporary standards of decency); *Garvin v. Fairman,* 1995 U.S.Dist. LEXIS® 13332, *14, 1995 WESTLAW® 548638 (N.D. Ill., Sept. 11, 1995) (*following Lunsford v. Bennett*: "In this case, although Garvin alleges that the food at the CCJ caused him stomach aches and heartburn, he cannot contend that ingestion of these meals placed him in immediate danger of the sort of harm contemplated by the Due Process Clause."); *Hoitt v. Vitek*, 497 F.2d 598 (1st Cir. 1974) (no valid civil rights claim stated where complaint alleged denial of hot meal but prisoners were adequately fed); *Vice v. Harvey*, 458 F. Supp. 1031, 1039 (D.S.C. 1978); and *Harrison v. Moketa/Motycka*, 485 F. Supp. 2d 652, 656 (D.S.C. 2007) (merely serving food cold does not present a serious risk of harm or an immediate danger to the health of

an inmate).[7]  *Cf. Strickler v. Waters*, 989 F.2d 1375 (4th Cir.), *cert. denied*, 510 U.S. 949 (1993).

The above-captioned case is also subject to dismissal under the so-called "three strikes" rule in the Prison Litigation Reform Act.  It can be judicially noticed that the plaintiff has filed more than three prior frivolous cases in this court.  "Strikes" have been entered in sixteen (16) of the plaintiff's prior cases.  *See, e.g.,* 28 U.S.C. § 1915(g); and *Green v. Nottingham*, 90 F.3d 415, 417-20 (10th Cir. 1996) (three strikes provision of 28 U.S.C. § 1915(g) can be applied retroactively).

This court may take judicial notice of the sixteen (16) cases in which "strikes" have been entered.  *Aloe Creme Laboratories, Inc. v. Francine Co.*, 425 F.2d at 1296.  *See also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'"); *Mann v. Peoples First National Bank & Trust Co.*, 209 F.2d 570, 572 (4th Cir. 1954) (approving district court's taking judicial notice of prior suit with same parties: "We think that the judge below was correct in holding that he could take judicial notice of the proceedings had before him in the prior suit to which Mann and the Distilling Company as well as the bank were parties."); and *United States v. Parker*, 956 F.2d 169, 171 (8th Cir. 1992).

It must also be noted that the "three-strikes" rule is a Congressional enactment that applies nationwide, and was not a judicially-created rule.  The Congress, however, has determined that prisoners, such as the plaintiff, who have filed prior frivolous litigation in a

---

[7]For examples of cases where constitutional violations in food service were found, *see Domegan v. Fair*, 859 F.2d 1059, 1063-65 & n. 5 (1st Cir. 1988) (serving of bread and water to prisoners over an extended period of time is a constitutional violation); *Harris v. Fairman*, 1995 U.S. Dist. LEXIS® 4038, 1995 WESTLAW® 151806 (N.D. Ill., March 30, 1995); and *Howard v. Wallace*, 1994 U.S.Dist. LEXIS® 18915, *17 [no WESTLAW® citation available] (S.D. Ala. Oct. 31, 1994) (magistrate judge's Report and Recommendation), *adopted*, 1994 U.S.Dist. LEXIS® 18900 [no WESTLAW® citation available] (S.D. Ala., Dec. 22, 1994).

8

federal court, shall be barred from pursuing certain types of federal civil rights litigation. *See Senate Select Committee on Presidential Campaign Activities v. Nixon*, 366 F. Supp. 51, 55 & n. 6 (D.D.C. 1973) (*paraphrasing* Job 1:21 (Authorized Version of 1611 ["King James" version]): "When it comes to the jurisdiction of the federal courts, truly to paraphrase the scripture, the Congress giveth and the Congress taketh away."). Even so, this case is not the first instance where new laws have affected plaintiffs. *See also* statutes changing altering statutes of limitations, such as those at issue in the case entitled *In Re TMI* [Three-Mile Island Litigation], 89 F.3d 1106 (3rd Cir. 1996), *cert. denied*, *Aldrich v. General Public Utilities Corp.*, 519 U.S. 1077 (1997) (upholding amendments to Price-Anderson Act retroactively applying two year limitations period to plaintiffs who filed suit under then-applicable six-year statute of limitations). *Cf. Bay View, Inc. v. AHTNA, Inc.*, 105 F.3d 1281, 1283 (9th Cir. 1997) ("Congress giveth and it taketh away."); *NGS American, Inc. v. Barnes*, 998 F.2d 296, 298 (5th Cir. 1993) ("As Congress giveth, Congress taketh away."); and *Mirabal v. GMAC*, 537 F.2d 871 (7th Cir. 1976).[8] The plaintiff, however, is clearly subject to the Prison Litigation Reform Act (PLRA) because this case was filed more than eleven and one-half years after the enactment of the PLRA on April 26, 1996.

The Congress has determined that prisoners subject to the "three strikes" rule have no remedy for actions that do not place them under the imminent danger of serious physical injury. *See Banos v. O'Guin*, 144 F.3d 883 (5th Cir.1998) (to avoid bar under imminent danger exception to "three-strikes" provision, prisoner must be in imminent danger

---

[8]Unrelated portions of the holding in *Mirabal v. GMAC* — whether interest rate increases constituted new transactions and how many recoveries were allowed for separate violations of the Truth in Lending Act — were superannuated by statutory changes made to the Truth in Lending Act in 1980. *See* the Truth in Lending Simplification and Reform Act of 1980, 94 U.S.Stat. 168 (1980), which is cited in *Brown v. Marquette Savings and Loan Assn.*, 686 F.2d 608 (7th Cir. 1982), which overruled, in part, *Mirabal v. GMAC*.

at time he seeks to file suit in district court, rather than at time of the alleged incident that serves as basis for the complaint):

> The district court found that Banos had filed at least four prior actions that had been dismissed as frivolous, that he had not alleged that he was in imminent danger of serious bodily injury and therefore dismissed his complaint pursuant to 28 U.S.C. § 1915(g). The dismissal order does not mention Banos' allegation of "immediate physical injury."
>
> Banos filed a notice of appeal and an application to proceed IFP on appeal. The magistrate judge assessed a partial filing fee and allowed Banos to proceed IFP on appeal.
>
> ANALYSIS
>
> The district court's determination that § 1915(g) bars Banos from proceeding IFP in a civil action seems incongruous with the grant of leave to appeal IFP. Section 1915(g) provides:
>
>> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.
>
> The district court did not err in finding, and Banos does not contest the fact, that he has had at least three dismissals on the basis of frivolousness. *See Banos v. Caldwell*, No. 97-40186 (5th Cir. Aug. 15, 1997) (unpublished); *Banos v. Gail*, No. 97-40466 (5th Cir. Aug. 15, 1997) (unpublished); *Banos v. Brown*, No. 97-40468 (5th Cir. Aug. 15, 1997) (unpublished).
>
> In light of these three "strikes," Banos cannot proceed on appeal IFP unless the statutory exception applies, that is, unless he "is under imminent danger of serious physical injury." § 1915(g); *see Adepegba v. Hammons*, 103 F.3d 383, 388 (1996). This case requires us to determine what showing must be made by a plaintiff who asserts that he should be allowed to

proceed IFP because he is in imminent danger of serious physical injury. The plain language of the statute leads us to conclude that a prisoner with three strikes is entitled to proceed with his action or appeal only if he is in imminent danger at the time that he seeks to file his suit in district court or seeks to proceed with his appeal or files a motion to proceed IFP. See § 1915(g).

The only other circuit that has addressed this issue came to a different conclusion. The Third Circuit, in *Gibbs v. Roman*, 116 F.3d 83 (3rd Cir.1997), held that an inmate filing a complaint pursuant to § 1915(g) must allege imminent danger at the time of the alleged incident that serves as the basis of the complaint rather than at the time the complaint was filed. *Gibbs*, 116 F.3d at 86. We read the statute to require the inquiry concerning the prisoner's danger to be made at the time of the IFP motion.

In revising § 1915, the 104th Congress intended to discourage the filing of frivolous IFP law suits. *See* H.R.REP., No. 104-21, § 202, at 22 (1995). Congress designed the new IFP provision to require every IFP litigant to pay the requisite filing fees in full. 28 U.S.C. § 1915(b). However, IFP status allows an indigent litigant to make periodic partial payments as his ability to pay allows and does not require full payment before the litigation goes forward. Id. If a litigant abuses the IFP privilege, as evidenced by three "strikes" (dismissals for frivolousness), § 1915(g) has the effect of delaying litigation of the merits of a claim until the fee is paid in full. * * * When such a delay threatens "imminent danger of serious physical injury," the litigant will be granted IFP status in spite of his past abuse and allowed to pay out his filing fee obligations. In order to implement this statutory scheme, we must determine if danger exists at the time the plaintiff seeks to file his complaint or notice of appeal IFP. Likewise, the language of § 1915(g), by using the present tense, clearly refers to the time when the action or appeal is filed or the motion for IFP status is made.

Applying this standard to Banos, we conclude that he is not entitled to proceed with this appeal IFP. He has not alleged, much less established, that he faced imminent danger of serious physical injury at the time that his notice of appeal was filed. We therefore REVOKE his IFP status and dismiss his appeal. The appeal may be reinstated if Banos pays the appeal fees within thirty days of this dismissal.

*Banos v. O'Guin*, 144 F.3d at 884-885 (footnote omitted from quotation). *See also Witzke v. Hiller*, 966 F. Supp. 538, 539 (E.D. Mich. 1997) (district court may dismiss case *sua sponte* under "three-strikes" provision), *reconsideration denied*, 972 F. Supp. 426 (E.D. Mich. 1997).[9]

## *Recommendation*

Accordingly, it is recommended that the District Court dismiss the above-captioned case *without prejudice* and without issuance and service of process. *See Denton v. Hernandez*; *Neitzke v. Williams*; *Haines v. Kerner*; *Brown v. Briscoe*, 998 F.2d 201, 202-204 & n. * (4th Cir. 1993), *replacing* unpublished opinion originally tabled at 993 F.2d 1535 (4th Cir. 1993); *Boyce v. Alizaduh*; *Todd v. Baskerville*, 712 F.2d at 74; 28 U.S.C. § 1915(e)(2)(B) [essentially a redesignation of "old" 1915(d)]; and 28 U.S.C. § 1915A [as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal]. The plaintiff's attention is directed to the Notice on the next page.

January 30, 2008                                                s/William M. Catoe
Greenville, South Carolina                              United States Magistrate Judge

---

[9]Although a jail's or correctional institution's failure to provide heat and warm clothing may constitute a facially cognizable civil rights claim, *see, e.g., Gatson v. Coughlin*, 249 F.3d 156, 164-65 (2nd Cir.2001) (summary judgment denied where prisoners were exposed to bitter cold temperatures for long periods of time); *Henderson v. DeRobertis*, 940 F.2d 1055, 1058-59 (7th Cir.1991) (reversing judgment notwithstanding the verdict where heating system malfunctioned in prison wing causing inside temperatures to drop below freezing; broken windows allowed cold air inside the cells; and plaintiffs were not permitted to bring their warm clothes upon transfer to that unit); and *Kirby v. Blackledge*, 530 F.2d 583, 587 (4th Cir.1976) (allegation of inadequate heating), the "three strikes" rule precludes consideration of the matter in the above-captioned case.

**Notice of Right to File Objections to Report and Recommendation**

The plaintiff is advised that he may file specific written objections to this Report and Recommendation with the District Court Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** In the absence of a timely filed objection, a district court judge need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

**Larry W. Propes, Clerk
United States District Court
Post Office Box 10768
Greenville, South Carolina 29603**

**Failure to timely file specific written objections to this Report and Recommendation will result in a waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.), *cert. denied*, *Schronce v. United States*, 467 U.S. 1208 (1984); and *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).